ALBERT C. PARSONS vs. JOSEPH G. MARTIN.

A broker, to whom a certificate of shares in a corporation has been entrusted by their owner, with written directions to sell under circumstances specified, has no right to transfer the shares for any other purpose to the name of another person or to his own name; and evidence is inadmissible of a custom among brokers so to do; and the owner may treat such transfer as a sale, and recover of the broker the market price of the shares on the day of the transfer, although the broker afterwards tenders him another certificate of an equal number of such shares, which he refuses to receive and does not re-transfer to the broker.

In an action to recover the value of shares entrusted to a broker to sell, the judge instructed the jury that in determining whether the defendant had received the money for the shares, they might take into consideration that in answering interrogatories propounded to him he made no pretence that he had not received the money for them. *Held*, that the defendant had no ground of exception.

ACTION OF CONTRACT upon this account annexed to the writ : "1855, April 11. To cash received by you for thirteen shares of stock in the Vermont and Massachusetts Railroad Company sold by you for me, $286."

At the trial in the court of common pleas in Franklin, before *Morris*, J., the plaintiff put in evidence the defendant's answers to interrogatories propounded to him by the plaintiff, from which it appeared that on the 27th of March 1855, the plaintiff sent from Northfield to the defendant, a broker in Boston, nineteen shares of the stock of the Vermont and Massachusetts Railroad Company, thirteen of which belonged to the plaintiff, and the other six to his father, Jabez Parsons ; that on the 9th of April, in answer to a letter from the defendant, the plaintiff wrote : "The six shares of Jabez Parsons he wishes to have sold without delay. As to my thirteen shares, I think with yourself that they will go up on the passage of the loan bill, of which from the reports of the Daily Telegraph (which I take) and the opinion of members of the house, there is not much doubt ; but you have the best opportunity of knowing when it will be best to sell. I am in no hurry, and wish to wait until in your opinion that time has come, but do not let it pass ; " that on the 10th of April the defendant sold the six shares belonging to Jabez Par-

sons to David Russell for $22 a share, and the next day sent the proceeds of that sale to the plaintiff, and transferred four of the plaintiff's shares to Russell and the remaining nine to his own name.   Upon this point the defendant made this statement:

" It is the custom among brokers to place the stock sent them for sale to their own names on the books of the company, and, in making transfers, to do so indiscriminately, without regard to the person from whom the stock was received, or for whose account the same is sold ; and in order to avoid a double transfer on the company's books, I did temporarily transfer four of the shares received on sale for the plaintiff to Mr. Russell, but the same were not sold on the account of the plaintiff, as I thought my instructions from the plaintiff were such as to compel me to hold his stock longer, as I then believed it would reach a higher price.   In accordance with this custom I transferred the remaining shares to my name on the 11th of April.   The highest market price on that day was $22 a share, but it was unsettled, and fluctuated between $18 and $22 from day to day."

The defendant made no further return of his doings to the plaintiff, who on the 14th of January 1856 wrote to him about the stock ; and he on the 19th sent him a statement of his doings and a certificate of thirteen other shares of the same stock. In reply the plaintiff demanded the money for the shares as transferred on the 11th of April.   The certificate of shares sent by the defendant to the plaintiff was returned by the plaintiff without any transfer or power of attorney, sent back again to the plaintiff and then by him put in the hands of Francis O. Irish, of Boston, subject to the defendant's order, but without any transfer or power of attorney, and there it has since remained.

The defendant presented a series of prayers for instructions, which the judge declined to give in terms ; but did give instructions, the material parts of which, as well as of those requested, are stated in the argument and opinion.   The jury returned a verdict for the plaintiff, and the defendant alleged exceptions.

*S. O. Lamb*, for the defendant.   The plaintiff cannot recover in this form of action, without showing that the defendant has

sold the shares and received the money for them. *Jones* v. *Hoar*, 5 Pick. 285. *Brown* v. *Holbrook*, 4 Gray, 102. *Ayres* v. *Sleeper*, 7 Met. 45. The transfer to Russell and the defendant for a temporary purpose, which worked no harm to the plaintiff, was legal and proper. Story on Agency, §§ 60, 96, 106. 1 Story on Con. § 155. *Clark* v. *Van Northwick*, 1 Pick. 343. *Van Alen* v. *Vanderpool*, 6 Johns. 69. The transfer of the nine shares to the defendant on the books of the company did not amount to a contract of sale and purchase between the plaintiff and the defendant; because the defendant, being the plaintiff's agent for selling the stock, could not himself be the purchaser. Story on Agency, §§ 9, 211. 1 Story on Con. § 126. *Copeland* v. *Mercantile Ins. Co.* 6 Pick. 198. The judge erred in refusing to instruct the jury that " the use by the defendant of the plain tiff's shares indiscriminately with his own would not amount to a sale of such shares ; " and that " if the use of the stock by the defendant was in accordance with the custom and usage of brokers, and he had at all times up to the demand an ability to re-transfer on demand the full number of shares, the use not being detrimental to the plaintiff, the plaintiff would not be entitled to recover the value of the stock, either in an action for money had and received, or for a sale of the stock." *Nourse* v. *Prime*, 4 Johns. Ch. 490. *Dykers* v. *Allen*, 7 Hill, 497. *Gilpin* v. *Howell*, 5 Barr, 57. *Ryder* v. *Hathaway*, 21 Pick. 306. *Smith* v. *Sanborn*, 6 Gray, 134. Story Bailm. § 40. 2 Kent Com. (6th ed.) 298. The plaintiff cannot recover, without first returning the certificate of stock sent to him at his request by the defendant, properly transferred. *Coolidge* v. *Brigham*, 1 Met. 547. 2 Parsons on Con. 192, note. Story on Agency, §§ 255, 258.

The instruction of the judge that " the jury, in determining whether the defendant had received the price of the shares, might take into consideration the circumstance that, while setting forth in his answers to the plaintiff's interrogatories those matters regarded by him as material to his defence, he made no pretence that he had not received the price of said shares," was erroneous. The defendant was not bound to disclose his whole case, but simply to answer such interrogatories

as were properly put to him.   *St.* 1852, *c.* 312, §§ 61, 69.   *Wil-son* v. *Webber*, 2 Gray, 558.

*D. W. Alvord & G. D. Wells*, for the plaintiff.

. MERRICK, J.  We think it unnecessary to express any opinion in detail in relation to each of the numerous prayers for instructions made by the counsel for the defendant, because we find that the substance of them all is embraced in those which were actually given to the jury.   It is never essential that the court should adopt the exact phraseology of a party who asks for a particular exposition of the law.   It is sufficient if the principle is righ'iy stated and a correct rule prescribed to aid in the decision of the questions in issue.

The defendant was an exchange and stock broker, doing business in the city of Boston.   And in that capacity he was employed by the plaintiff to sell for him thirteen shares of the capital stock of the Vermont and Massachusetts Railroad Company.   No objection is made to the first and leading proposition of the court in its instructions to the jury, that if the defendant sold and received the price of the thirteen shares, the plaintiff was thereupon entitled to recover in this action the proceeds of the sale.   The transfer of the shares to a third person certainly had a tendency to show that they had been sold to him, and if that fact was left wholly unexplained, it was sufficient to justify the jury in concluding that a sale had been actually made; for the stock was entrusted to the broker for no other purpose than to dispose of it to a purchaser, and in the absence of counter-acting proof it should be presumed that he acted in conformity to the directions given him.   As an agent of the owner, he had a right to do nothing else with the stock except to sell it.  He could not pledge it nor lawfully take it to himself, nor do any other act beyond the limits of the special authority conferred upon him.   As a transfer of the shares was a necessary consequence of a sale, it must import that a sale has taken place, if no other means exists for accounting in a legal manner for such a transaction.

When a sale is once either proved or conceded, and the agent is charged by his principal with having received the pro-

ceeds of it in money, his failure or omission to deny, in answer to interrogatories, when he has both the right and opportunity to develop his whole defence, that such proceeds had come into his hands cannot but tend to create a just belief that the charge is true.  This is a fact particularly within his own knowledge, and he would naturally and probably avail himself of any and every explanation concerning it which would relieve him from responsibility.  The conduct of a party in omitting to produce that evidence, in elucidation of the subject matter in dispute, which is in his own power, and which is known better to himself than to others, affords occasion for strong presumptions against him, since it must raise pregnant suspicions that the truth, if developed, would operate against him.    Stark. Ev. (4th ed.) 75.

The principle, stated by the court, that an agent or factor, who is authorized to sell property for cash only, does, upon selling it on a credit, become thereby immediately responsible to his principal for the whole debt or aggregate amount of the sale, is too thoroughly known and settled to be now doubted or brought into question.  *Hemenway* v. *Hemenway*, 5 Pick. 389 1 Parsons on Con. 50, & cases there cited.

The further instruction of the court, that " the defendant, if he had sold the shares, and received the price, could not defend against this action on the ground that, in accordance with a usage of brokers, he made such sale, not on account of the plaintiff, but for some other person, using the plaintiff's shares for this purpose, and replacing them with others of a like kind, unless it should appear that he was authorized so to do by the plaintiff," was perfectly correct.  His authority in reference to this stock was special and in writing.   He had a discretion to be exercised in relation to the time of sale, but in no other particular whatever.   Otherwise, he was to retain the certificate which had been entrusted to him for the owner, to whom it was essential as the evidence of his right to the stock which it represented.  As an agent acting under a written authority contained in the letter addressed to him on the subject, the defendant was bound to regard the instructions given him in every particular.  No usage or custom, such as that which he

attempted to show was recognized by and prevalent among the brokers in Boston, could affect the legal rights of the parties ; nor if fully proved, would the law sustain or tolerate it. Proof of usage is admissible to interpret the meaning of the language of the contract, or, where its meaning is equivocal and obscure, to ascertain its nature and extent, but not to vary its terms or introduce new conditions, or authorize the doing of acts which are in direct contravention of its provision. 1 Greenl. Ev. § 292. *The Schooner Reeside,* 2 Sumner, 567. *Campbell* v. *Hassel,* 1 Stark. R. 233. *Gibbon* v. *Young,* 8 Taunt. 254. If therefore the defendant did, in disregard of the obligation which he had assumed to exercise his best discretion as to the time when it would be most for the benefit of the plaintiff to make the sale for him, proceed to sell the stock for his own purposes, and on account of other parties, and receive in money the price therefor, such a proceeding was wholly inexcusable and tortious ; and the plaintiff had a perfect right, upon discovering the fact that his stock had been sold, and that thereby his property was disposed of and gone, to affirm the sale and insist upon receiving the proceeds of it from the defendant. *Jones* v. *Hoar,* 5 Pick. 285.

From these considerations it is obvious, and indeed it seems to be a necessary consequence from them, that the general proposition stated by the court, that " if the defendant caused the shares of stock belonging to the plaintiff to be transferred to himself in such a way and under such circumstances that they were not afterwards to be traced or distinguished from other shares held by the defendant, such a transfer, if made without the plaintiff's authority, could not be justified by any usage to that effect among brokers," was correct. And having thus violated his duty, by making a disposition of the stock which was unauthorized and unjustifiable, he became immediately responsible for the value of the property with which he had been entrusted. It was in effect a conversion of it to his own use ; and the well established rule in reference to compensation to be made or damages recovered in such cases is the market value of the property at the time of its conversion. *Pierce* v. *Benjamin,* 14 Pick. 361. *Weld* v. *Oliver,* 21 Pick. 559.

It is no defence to a claim arising under an unlawful conversion of property by such an unauthorized proceeding as this, that the defendant was at all times afterward either actually possessed of, or had the means of immediately obtaining, other shares of stock in the same company of equal value with those disposed of, which he was ready and intended, whenever called upon, to substitute for those belonging to the plaintiff, which he had disposed of. The misappropriation had already taken place, the wrong had been done, and the right to an adequate remedy had already accrued. The shares which the plaintiff had owned could no longer be identified; and there was no pretence therefore that they could ever be restored to him. He was not bound to take others in their stead, but was entitled to recompense for those which had been unlawfully taken from him.

But the whole claim of the plaintiff seems to have been fully established under the last and preceding instructions of the court; for it appears that before the commencement of the action the whole of the thirteen shares had been actually transferred by the defendant to other parties. Four of them were sold to Russell on the 11th of April 1855, and he paid twenty two dollars for each of them. The remaining nine shares were on the same day transferred by the defendant to himself on the books of the company; and these were afterwards conveyed by him to some party unknown to the plaintiff. When this conveyance took place is uncertain, but it must have been before the 15th of November following, for on that day no stock stood on the books of the company in the name of the defendant. He had in the mean time sold them for cash or upon credit; and in either case he had, as has been shown, made himself responsible to the plaintiff for the value of the several shares. And for this the present action may be maintained. It was for the jury to determine, upon all the evidence, what sum was realized for the stock and what the plaintiff was entitled to recover for it.

And he may maintain this action without reconveying, or giving to the defendant a power of attorney to reconvey, the thirteen shares specified in the certificate which was sent to

him by the defendant on the 19th of January 1856. These shares and this certificate were never accepted by the plaintiff; the certificate was put into his hands, but he never recognized it as conveying to him any property, or conferring upon him any right, or imposing upon him any duty. He tendered it first to the defendant, and afterwards left it for his use in the hands of Irish. He was bound to do no more. It is not like the case of a bargain rescinded on account of fraud or of some unperformed condition, or the occurrence of a specified contingency, where restitution is to be made before an action can be maintained. The plaintiff had not received or become the owner of anything, and therefore there was nothing for him to restore.

On the whole, it appearing that all the rulings and instructions given to the jury were substantially correct, that they covered all the propositions contained in the several prayers preferred to the court on the part of the defendant, and that the facts show that the plaintiff had a just and meritorious cause of action against him, the exceptions must be overruled and judgment entered on the verdict.